JOURNAL ENTRY and OPINION
Defendant-appellant herein, Ernie Sanders, appeals from the trial court's finding of contempt on appellee's motion to show cause, as well as its award of attorney fees to plaintiff-appellee Cleveland Surgi-Center, Inc.
The relationship of the parties to this appeal goes back to at least 1989. Appellee Surgi-Center is in the business of providing abortions and other pregnancy related services at its facility located at 3535 Lee Road in Shaker Heights, Ohio. The appellant is an ordained minister who regularly pickets and provides "sidewalk counseling" outside of the appellee's facility. The appellant is oftentimes joined by other protestors motivated by their opposition to legalized abortion.
In 1989, the appellee medical center, which was at that time located at a different address, reached an agreement with numerous defendants, including the appellant in the instant case, on the acceptable bounds of picketing and other protest activity outside of the clinic. This agreement was memorialized in a consent judgment order. The order was subsequently modified in 1990, 1993 and 1999.
The essential terms of the order and its binding nature were not at issue at the trial court level and are not at issue in this appeal. The behavior prohibited by the consent order included the following behavior:
 a. Conduct which includes verbal insults, shouting which can be heard inside the Premises, abuse, harassment and intimidation of the patients, employees and tenants of the Premises;
 b. Causing, creating or suggesting the presence of physical violence in or around the Premises;
 c. Any use of electronic or mechanical devices for the amplification of sound such as bull horns or public address systems, except as may be permitted by law on the property;
 d. Picketing in such a manner or number which causes an imminent and immediate threat or hazard to the safety of the picketers or others; or gathering or congregating in such a manner that blocks the lawful ingress or egress to the premises, or prevents pedestrians from free passage down the sidewalks.
The consent order also imposed obligations upon the appellees and its employees including that a "pro-life literature table" be maintained in the waiting room of the facility and that they not engage in "any conduct which interferes with or deprives defendants or any other person from exercising the picketing and other rights granted by this Order, including but not limited to the rights in e.1 above to maintain without interference the literature table on the premises * * *."
Appellee filed a motion to show cause on May 24, 2000 wherein it was alleged that appellant and other defendants had engaged in conduct violative of the consent order including the use of verbal insults, shouting, the use of a bull horn and intimidation of patients and employees by means of videotaping. Attached to the motion to show cause was an affidavit from Carol Westfall, the executive director of the Surgi-Center. The brief in support of the motion asked for sanctions only as against appellant Sanders and not any of the other originally named defendants.
A hearing was held on the appellee's motion to show cause on July 19, 2000. Prior to the hearing the trial court denied appellant's motion to show cause. The hearing included testimony from Westfall, several employees of the facility, police officers who had occasion to respond to the site, a patient and her boyfriend, the appellant and two persons who demonstrated with the appellant on a regular basis and were at the site on some of the occasions where the appellant and/or Westfall had allegedly engaged in behavior that violated the consent order.
The testimony of the witnesses for the opposing sides was almost entirely divergent. Witnesses for the appellee claimed that the appellant and other protestors repeatedly used profanities, including the word "whore," that the appellant utilized a bull horn and that the appellant could consistently be heard inside the facility. The appellant and the witnesses who testified on his behalf consistently and adamantly denied that they engaged in the use of profanity. Each also stated that the appellant had never used a bull horn during the course of his picketing activities outside of the facility and that the language found objectionable by the employees of the appellee were merely recitations of biblical passages.
Although employees of the appellee facility alleged prior to hearing that they had a tape of the protestors voices which demonstrated that they could be heard inside of the building, Westfall stated at the hearing that the tape no longer existed.
At the close of the hearing the trial court stated that the evidence supported only a single finding of contempt. This finding was based on the testimony of a Mrs. G an elderly employee of the clinic who testified that she had been called a "white haired old horror."[1] The trial court judge stated that he believed that such a comment had been directed towards Mrs. G and that the comment was in violation of the protective order, but that he was unable to determine the identity of the individual who made the comment. Accordingly, the trial court made the following finding:
 "* * * And that woman was hurt by his, I have got no doubt about it, when somebody called her an old white whore.
 And I believed her that it was said. I don't know who said it, but it was part of this group. Someone said that. And I believe that goes beyond all bounds of decency when you pick on somebody like that.
* * *
 So there is going to be a $300 fine and attorney fees. You will have to submit a bill for that.
* * *
 It is joint and several against all parties here, including the Reverend. * * * You can pick and choose.
After reviewing the billing statements submitted by counsel for the appellee, the trial court awarded attorney fees in the aggregate amount of $24,086.84.
The appellant timely filed the within appeal with this court and presents a total of four assignments of error for our review. The first three assignments of error, being interrelated and having a common basis in law and fact, will be addressed concurrently. Assignments of error one through three are as follows:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING, BY ITS OWN ADMISSION, TO IDENTIFY BY ANY CREDIBLE EVIDENCE THE (SIC) ALLEGED CONTEMNOR AND FURTHER ABUSED ITS DISCRETION IN FAILING TO AFFIRMATIVELY IDENTIFY ANY INDIVIDUALS "IN CONCERT WITH" THE ALLEGED CONTEMNOR."
 "II. THE TRIAL COURT BELOW ABUSED ITS DISCRETION IN FAILING TO USE THE "CLEAR AND CONVINCING" STANDARD TO IDENTIFY A PARTICULAR VIOLATOR OF A COURT ORDER.
 "III. THE TRIAL COURT BELOW ABUSED ITS DISCRETION IN FAILING TO IDENTIFY THE PARTICULAR INDIVIDUAL LIABLE FOR THE PAYMENT OF BOTH FINE AND ATTORNEY FEES, AND TO HOLD A HEARING ON THE ISSUE; AND FURTHER THE COURT BELOW ABUSED ITS DISCRETION IN AWARDING ATTORNEY FEES IN THE FIRST PLACE."
The Ohio courts have distinguished the degree of proof necessary in civil as opposed to criminal contempt proceedings. In criminal contempt proceedings, the courts have held that the standard of proof is guilt beyond a reasonable doubt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250. This court in Brown at 253-254 held:
 "* * * [C]ourts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of punishment. * * * [Citations omitted.] Punishment is remedial or coercive and for the benefit of the complainant in civil contempt."
In Brown, this court looked at the nature of the various penalties imposed to determine if they were civil or criminal and stated at 253: "* * * [a]ny civil penalties imposed will be valid since the trial judge stated that the appellees were guilty of contempt by clear and convincing evidence." Pugh v. Pugh (1984), 15 Ohio St.3d 136,139-140.
Thus, the applicable standard of review in the case subjudice is whether there existed clear and convincing evidence that the appellant acted in such a manner as to violate the consent order. We find that such evidence did not exist, as was clearly found by the trial court both in its findings on the record and its opinion and order. As was stated earlier in this opinion, the trial judge found that an offensive comment was made to Mrs. G, but expressly refused to make a finding that the comment was made by the appellant. The court stated "I don't know whosaid it, but it was part of this group." This plainly is not a finding by clear and convincing evidence that the appellant called Mrs. G a whore and in so doing violated the modified consent order.
There is no way for this court to determine who made the offensive comment in question and whether or not they were a party to the proceedings below. Although the trial court found the "defendants" in contempt "jointly and severally," the appellees' motion to show cause related only to the appellant and the testimony at the hearing dealt only with the conduct of the appellant and not of any other named defendants from prior proceedings.
Accordingly, we find that the first three assignments of error have merit and we therefore reverse the judgment of the trial court as to the contempt finding, as well as the award of attorney fees.
The appellant's fourth assignment of error states:
 "IV. EVEN IF THE IDENTITY OF THE CONTEMNOR WERE NOT REQUIRED, NONETHELESS, THE PARTICULAR SPEECH HEREIN IS PROTECTED BY DEFENDANT/APPELLANT'S FIRST AMENDMENT RIGHTS AS A DEMONSTRATOR ON A PUBLIC SIDEWALK."
This assignment of error has been rendered moot by our disposition of the first three assignments of error.
Judgment reversed.
This cause is reversed.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., CONCURS. PATRICIA A. BLACKMON, J., DISSENTSWITH SEPARATE DISSENTING OPINION.
[1] Although the transcript of the record indicates that Mrs. G alleges that she was called a "horror," the appellee represents to this court that the actual word used was "whore," and that the transcript is consistently inaccurate in this respect. For the purposes of this appeal, we accept that the offensive epitaph allegedly hurled at Mrs. G was "whore."